UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSE G. RIVERA,

    Plaintiff,

v.                                               Case No. 8:05-cv-1324-T-TBM

JO ANNE B. BARNHART,
Commissioner of the United States
Social Security Administration,

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was twenty-nine years of age at the time of his administrative hearing. Plaintiff has a limited ninth grade education. His past relevant work was as truck driver, night janitor, fast food cook and server, and grocery store stocker. Plaintiff applied for disability benefits and Supplemental Security Income payments in March 2003, alleging disability as of May 17, 2001, by reason of screws in his lower back, anger, nervousness, depression, and anxiety. The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). In essence, Plaintiff claimed that he could no longer work at any job because of back pain and depression. Plaintiff testified that he is not able to be around people because of the depression. By his description, he becomes nervous and intimidated, cannot think straight, and is forgetful. He claims he angers quickly and strikes out at people without realizing it and could hurt someone. As an example, he indicated that the preceding Christmas, he had lost it and cut his father. He also indicated that he believes it is growing worse because of his situation and not being able to care for his family as he believes he should. Plaintiff stated he does not have any insurance and has been unable to continue receiving treatment and/or medication for the depression or back pain due to his inability to pay. Plaintiff testified that on some days, he needs to lie down approximately five to seven times a day depending on the level of pain in his back. He further stated that he sometimes takes his dad's medicine to help with the pain, along with over-the-counter medications, hot baths, ice patches, and alternating between laying down and standing up to deal with his pain. Using a TENS unit has not helped.

Plaintiff testified he could lift a gallon of milk, but that holding his six-pound baby for more than ten minutes is very painful. He can stand for about thirty minutes, walk about a block or two, and sit for approximately thirty minutes. He drives only when necessary and limits his trips to short distances. See Plaintiff's testimony (R. 46-56).

On a subsequent date, the ALJ also took testimony from Joyce Courtright, a vocational expert (hereinafter "VE"). She testified on an assumption of an individual of

Plaintiff's age and condition with the ability to lift twenty pounds occasionally and ten pounds frequently, needing a sit stand option at will, with limitations for occasional stooping, but no squatting, kneeling, crawling, or climbing and limited to simple work with no contact with the public and only occasional contact with coworkers.  On this hypothetical, the witness opined that Plaintiff could not do his former work but could perform work in the local and national economy such as small parts assembly, wrap and pack, and injection molding machine tending.  However, given additional limitations for needing to take extra breaks during the day for up to thirty minutes, a possible attendance problem about three times or more a month, and the inability to maintain attention and handle normal work stress, the VE opined that the Plaintiff would be unable to perform any work in the local economy.  (R. 59-62).

Also before the ALJ were medical records outlining the Plaintiff's medical history.  These matters are addressed herein as necessary.

By his decision of February 10, 2005, the ALJ determined that while Plaintiff has severe impairments related to status post diskectomy at L4-5, L5-S1, with instrumentation and fusion, and depression, he nonetheless had the residual functional capacity to perform a limited range of light exertional work.  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 11-23).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that she has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v.

Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises two claims on this appeal.  As stated by the Plaintiff, they are as follows:

(1) The Commissioner has presented, to the Court and to the Plaintiff, a fatally flawed transcript, which cannot stand as showing an adequate basis for decision-making, nor as a adequate transcript for court review of such decision; and

(2) The Commissioner erred in failing to consider whether the Plaintiff might be entitled to a finding of a closed period of disability.

By his first claim, Plaintiff contends that Exhibit 9F, purportedly the records of Dr. Luis Byrne, is missing, and the failure of the record to include the exhibits or otherwise explain why they are missing requires that the case be remanded for the inclusion of these records. By his argument, "Luis Byrne" is listed as licensed in Florida is a psychiatrist, and if he is, in fact, a treating doctor for the Plaintiff, his notes could be invaluable in evaluating this claim. In response to this claim, the Commissioner asserts that Exhibit 9F was incorrectly submitted at the administrative level and therefore omitted before the court because it concerned another claimant. The Commissioner notes that on August 20, 2005, Plaintiff's then representative confirmed to the Commissioner that Exhibit 9F involved a different claimant. In these circumstances, there was no need, and indeed, it would have been improper, to include Exhibit 9F in this record. Additionally, the Commissioner argues that Plaintiff never claimed to have been treated by a Dr. Luis Byrne, and there is no other indication in any medical report that Plaintiff had ever seen Dr. Byrne for treatment purposes.

Given the Commissioner's response, I find no merit to this claim. Although the record does not appear to record the communication in August 2005 between Plaintiff's representative and the Commissioner confirming that the records were for a different claimant, and while I do not at all seek to minimize the importance of the court working from a complete record, there is simply no basis to doubt the Commissioner's representation. This is especially true since the Plaintiff himself does not affirmatively contend or demonstrate that he saw Dr. Byrne for treatment. Thus, there would be no useful purpose in remanding this case solely to better document this "missing" record or the striking of the same.

By his second claim, Plaintiff contends that the medical evidence related to the treatment of his back injury establishes that he was disabled for at least a twelve-month period from his date of alleged onset in May 2001. In support, Plaintiff contends that the records from that period, although somewhat inconsistent, suggest a closed period of disability, and at a minimum, the ALJ should have recontacted Plaintiff's treating sources or utilized a medical expert to clarify the record in fulfilling his obligation to develop a full and fair record. By this argument, the case should be remanded for further development of the record.

With respect to this second claim, the Commissioner responds that the Plaintiff fails to lay out or explain how he is entitled to such a closed period of disability and in any event, he cannot do so on the basis of his medical record. By the Commissioner's review of the record, there is no evidence of a sudden onset of disabling symptoms. Instead, it reveals that Plaintiff did not pursue regular treatment for his back injury for several months subsequent to the alleged onset date. Indeed, he first saw Dr. Inga on August 28, 2001. Further, the records of Dr. Rodriguez make no mention of severe difficulty with the back until August 2001 and no indication at all that the difficulty was disabling. While Plaintiff underwent back surgery on April 26, 2002, the early post-operative reports suggested very good results with limited complaints of pain. By this argument, even if Plaintiff's complaints to his medical providers are taken at face value, his disabling pain did not begin until October 2001 and was apparently gone by late June 2002. Finally, the Commissioner urges that the Plaintiff's statements should not be taken at face value and that the ALJ's conclusion that

Plaintiff was not fully credible is supported by substantial evidence. Here, the Commissioner cites to Dr. B.J. Hatton's consultative examination, test results from which suggested that Plaintiff was distorting his test results and Plaintiff's daily routine caring for his infant child as reasons supported by the record for discounting his pain complaints.

While the Plaintiff is undoubtedly correct that the ALJ has the duty to develop a full and fair record, it is also the case that the claimant bears the burden of proving that he is disabled and consequently the burden of producing evidence to support his claim. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). By my own reading of Plaintiff's medical records for the period in question, the ALJ was not required to award a closed period of disability based on the records for the twelve-month period following his back injury on May 17, 2001. Indeed, as the Commissioner points out, the medical records thereafter begin in June 2001, when Plaintiff began seeing psychiatrist, Dr. Luis C. Rodriguez, because of concern for a scar on his face received after he was injured at work by a splinter of plywood hitting his face.[1]

Nothing in these records would support that Plaintiff was suffering from disabling back pain (or other condition) at that time and it appears that Plaintiff did not make mention of his back pain until August 2001, despite being "overly preoccupied" with his injuries, according to this doctor. Treatment notes related to Plaintiff's back do not begin until late August 2001, when Plaintiff saw Dr. Jorge J. Inga for back pain. While the doctor

---

[1] While there is some indication that Plaintiff received treatment between May and August 2001 for his back, there are no records documenting this in the record, and it does not appear that Plaintiff made a request to supplement the record or otherwise attempted to file the records for the ALJ's consideration.

placed Plaintiff on temporary disability for worker's compensation due to his bulging discs, the neurological findings repeatedly showed good strength in all four extremities and only minor sensory deficit prior to the surgery. However as the Commissioner urges, the records post surgery in April 2002, suggest a very good result with reports of little or no pain  Thus, in May 2002, Dr. Inga's reported a "most satisfactory post operative result," with no radiating pain in the legs and Plaintiff no longer using pain medication. (R. 218). In June 2002, the Plaintiff gave the same report and the clinical findings were positive. (R. 217). While the Plaintiff complained of lumbar pain in July 2002, the clinical findings were positive and in August 2002, the pain had subsided and clinical findings were again positive, and he was ordered into physical therapy so that he could be returned to work. (R. 215). Similarly, the reports from his surgeon, Dr. John Small, were very positive post-surgery. In May 2002, Plaintiff's pain was rated at 1 out of 10. In June 2002, the pain was gone. Although he could not be returned to his work, he was exercising at home. (R. 165-67).

     While I do not make light of Plaintiff's back injury or the pain it likely caused him for a time, I do conclude that he failed to establish from his medical evidence that he was entitled to a closed period of disability by reason of his pain as he now alleges. The reasons suggested for discounting his subjective testimony are not challenged on this appeal and otherwise appear supported by the substantial evidence. Insofar as Plaintiff now complains that the ALJ should have recontacted his doctors or called a medical expert to clarify inconsistencies in the medical reports, I note that such a request was not made at the time of the hearing and is not demonstrated on this appeal to have been necessary for an informed

decision by the ALJ.  In the final analysis, the ALJ credited Plaintiff with a number of significantly limiting symptoms but not to the extent that they prevented him from all work. Even with the limitations, the VE identified jobs available to the Plaintiff in the economy. On my review, the factual conclusions are supported by substantial evidence, and there is no showing that the ALJ ignored or violated any applicable standard.

## IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is affirmed.  Accordingly, the  Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 8th day of August 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record